(No. 31813.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MICHAEL J. HAGOPIAN, Plaintiff in Error.

*Opinion filed March 22, 1951.*

HARRY J. BUSCH, of Chicago, (MYER H. GLADSTONE, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, EDMUND H. GRANT, and JOSEPH M. WOSIK, all of Chicago, of counsel,) for the People.

* Mr. JUSTICE WILSON delivered the opinion of the court:

By an order of the criminal court of Cook County, Michael J. Hagopian was adjudged guilty of a direct contempt of court and sentenced to imprisonment in the county jail for one year. Hagopian, hereafter referred to as defendant, prosecutes this writ of error.

This contempt proceeding arose out of a hearing upon a motion for a mistrial in People v. Hansen, No. 50-1207, in the criminal court of Cook County. The evidence presented at the hearing disclosed that Hagopian enlisted the aid of a tavern owner in seeking out a particular juror in the Hansen case, approached the juror in the home of a neighbor of the juror, and there attempted to influence the juror to vote for a verdict of not guilty. After granting a mistrial, the court continued the hearing to the following

---

* This opinion was prepared by the late Mr. Justice Wilson and has been adopted and filed as the opinion of the court.

day, when Hagopian appeared for the first time. His appearance was voluntary, no information or other pleading having been filed against him, and he was represented by counsel. Called as a witness by the court, he answered preliminary questions, admitted he knew Hansen, denied that he saw the tavern owner on the night in question, and refused to answer all other questions upon the ground his answers might incriminate him. Defendant also refused to make a statement or offer any evidence, whereupon the trial judge found him guilty of a direct contempt of court and pronounced sentence. Subsequently, a motion by defendant to vacate the judgment upon the ground he had been denied due process of law was denied.

The initial question to be determined relates to the jurisdiction of this court. A criminal contempt is a misdemeanor. (*People* v. *Siegal,* 400 Ill. 208.) Misdemeanors are reviewable in the first instance by writs of error sued out of the Appellate Court. (Ill. Rev. Stat. 1949, chap. 38, par. 780½.) As a practical matter, the right to sue out a writ of error from this court for a direct review of a judgment of conviction of a misdemeanor is limited to cases in which a fairly debatable · constitutional question was passed upon by the trial court and properly preserved for review. *People* v. *Brickey,* 396 Ill. 140; *People* v. *Moe,* 381 Ill. 235.

Defendant claims that he was denied due process of law in that no information, petition or citation to show cause was presented against him, and that he was deprived of his right to meet the witnesses against him face to face and to cross-examine them. While these issues were presented to the trial court for determination by the motion to vacate the judgment and have been properly preserved for review, the question remains as to whether a constitutional issue is fairly involved and, if so, whether it is debatable.

The power of a court to punish for contempt exists independent of statute and has been recognized from the

beginning of our judicial administration. (*People* v. *Siegal,* 400 Ill. 208; *People* v. *Seymour,* 272 Ill. 295.) Contempts of court are classified as direct and indirect. A direct criminal contempt consists of any conduct which tends to embarrass or obstruct the court in the administration of justice or tends to bring the administration of the law into disrepute. (*People* v. *Sherwin,* 334 Ill. 609; *People* v. *Cochrane,* 307 Ill. 126.) Upon the commission of a direct contempt in open court, the trial judge may act upon his personal knowledge of the facts and punish the offender summarily without the filing of an information or the entry of a rule to show cause and without any hearing. (*In re Estate of Kelly,* 365 Ill. 174; *People* v. *Whitlow,* 357 Ill. 34; *People* v. *Andalman,* 346 Ill. 149; *People* v. *Cochrane,* 307 Ill. 126.) Moreover, it is settled that a summary proceeding for the punishment of a direct contempt does not constitute a violation of constitutional guaranties of due process of law. *Ex Parte Terry,* 128 U.S. 289; *People* v. *Siegal,* 400 Ill. 208.

Direct contempts are not limited, however, solely to acts committed in open court in the ocular view of the judge. Misbehavior committed in any place set apart for the use of any constituent part of the court is deemed to have been committed in the presence of the court and, if contemptuous, constitutes and is punishable as a direct contempt. (*In re Estate of Kelly,* 365 Ill. 174; *People* v. *Sheridan,* 349 Ill. 202; *People* v. *Andalman,* 346 Ill. 149; *Dahnke* v. *People,* 168 Ill. 102.) In these cases extrinsic evidence is essential to prove the charge. *In re Estate of Kelly,* 365 Ill. 174; *People* v. *Andalman,* 346 Ill. 149.

An indirect contempt is one committed out of the presence of the court. (*People* v. *Whitlow,* 357 Ill. 34; *People* v. *McDonald,* 314 Ill. 548.) In cases of this character, an information, notice, citation or rule to show cause must be served upon the alleged contemnor and he is entitled to a hearing. (*People* v. *Pomeroy,* 405 Ill. 175; *People* v. *Whit-*

*low,* 357 Ill. 34.) If the accused should answer denying the alleged wrongful acts, his answer is conclusive and he is entitled to his discharge. (*People* v. *Whitlow,* 357 Ill. 34; *People* v. *McDonald,* 314 Ill. 548.) If the answer is false, the remedy is by indictment for perjury. (*People* v. *McLaughlin,* 334 Ill. 354; *People* v. *McDonald,* 314 Ill. 548.) Where the alleged indirect contempt is admitted, the contemnor may be punished summarily as in cases of direct contempt. *People* v. *Pomeroy,* 405 Ill. 175; *People* v. *Berof,* 367 Ill. 454.

The foregoing rules and principles are well settled and, from this, it is evident that constitutional questions relative to due process of law in contempt proceedings are not fairly debatable. Indeed, none of the foregoing rules are controverted, the briefs of both the defendant and the People being devoted almost exclusively to the issue of whether an attempt to influence a juror at a place distant from the court constitutes a direct or indirect contempt. A dispute as to whether the facts found constitute a direct criminal contempt does not involve a constitutional question. (*People* v. *Siegal,* 400 Ill. 208.) In cases of this character, a constitutional question arises only where there is some claim by the accused that he has a constitutional right to do or refrain from doing the alleged contumacious act, as, for example, where a witness before the grand jury is adjudged guilty of contempt for his failure to answer questions in reliance upon alleged constitutional guaranties. (*People* v. *Spain,* 307 Ill. 283; *People* v. *Cochrane,* 307 Ill. 126.) The facts constituting the contempt here do not raise any question of constitutional law and, no fairly debatable constitutional issue being presented for determination, this court is without jurisdiction on direct review.

The cause is transferred to the Appellate Court for the First District.

*Cause transferred.*